## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CRISTINA FRANCISCO,

               Plaintiff,

v.                                    Case No. 8:23-cv-1518-KKM-AEP

PINELLAS COUNTY, a political
subdivision of the State of Florida,

               Defendant.

_____

## ORDER

      Defendant Pinellas County moves for summary judgment against Plaintiff Cristina Francisco on all counts. (MSJ) (Doc. 39). After reviewing the motion, Francisco's response, (Resp.) (Doc. 44), the parties' statement of undisputed facts, (JSOF) (Doc. 32), the reply, (Doc. 49), and the record, I grant the County's motion.

## I.      BACKGROUND

      Cristina Francisco began volunteering for the County in January of 2017. JSOF ¶ 1. Her national origin is Romanian. Compl. (Doc. 1) ¶ 12; Answer (Doc. 10) ¶ 12. After being hired by a temporary employment agency as a National Pollution Discharge Elimination System (NPDES) employee in October 2017, she was assigned to work for the County. JSOF ¶ 2. In February 2018, the County hired Francisco as an Environmental Specialist I-Fertilizer (ES-1) in the Environmental Management Division of Public Works. *Id*. ¶ 3. The job included "various tasks," including performing retail inspections, responding to citizen complaints "about various discharges" like blowing leaves in the storm drain, training volunteers and interns on County programs, and doing outreach programs. Plf. Dep. (Doc. 35-1) 22:3–8. Francisco was with the fertilizer ordinance program, which was dedicated

to protecting storm drains and to preventing illegal discharges. *Id*. at 25:13–20. Throughout her time with the County, Francisco's direct supervisor was Anamarie Rivera, the department manager was Melanie Weed, and the division director was Kelli Levy. JSOF ¶ 4. Francisco and her coworker, Ryan Ryczek, performed in-person inspections of retail stores. *Id*. ¶¶ 18–19. Both Ryczek and Francisco reported to Rivera as their direct supervisor. *Id* ¶ 20.

At some point in 2019, a vacant position for an Environmental Specialist II-NPDES role became available. Plf. Dep. 26:12–20. Francisco, who wanted the job, learned about the opening through a Facebook post during the open-application period. JSOF ¶ 7. This upset Francisco because she believed she should have been personally notified about the position, instead of finding out about it through Facebook. *Id*. ¶ 8. Francisco points to this situation as what caused her to have insomnia, anxiety, and depression. Plf. Dep. 28:3–7. Weed apologized to Francisco for posting the opening before notifying employees and informed Francisco that there is "no requirement to notify employees when positions are posted." JSOF ¶ 9. Francisco did not apply for the position. *Id*. ¶ 10. In April 2019, Weed requested that Francisco watch an emotional intelligence video, and subsequently an emotional intelligence class, after interpreting Francisco's behavior as "abrupt." Plf. Dep. 40:11–18; 39:6-7, 23–25.

On March 15, 2020, Francisco was promoted to Environmental Specialist II-Fertilizer. JSOF ¶ 11. According to County policy, the promotion was probationary for six months, so Francisco's probationary period would expire in September 2020. *Id*. ¶ 13. Around five days after her promotion, Francisco filed an internal discrimination claim against management for national original discrimination and

hostile work environment. Plf. Dep. 35:3–4, 80:3–4. The County dismissed this complaint on May 8, 2020. Compl. ¶ 29; Answer ¶ 29. In April 2020, the COVID pandemic caused all Environmental Management employees to work remotely, including Francisco. JSOF ¶ 16. On May 27, 2020, employees were required to resume in-store inspections, but only for retailers who were likely to violate County ordinances. *Id*. ¶ 17. The next day, Francisco expressed her "concern for performing retail inspections" and that she did not want to "be exposed to areas that have high traffic of people such as our fertilizer retailers." *Id*. ¶ 18. The County provided accommodations for Francisco to limit her in-person communications. Plf. Dep. 44:2–12.

On June 30, 2020, there was a meeting scheduled between Francisco, Weed, and Rivera to discuss Francisco's performance, but Francisco did not attend. Plf. Dep. 45:9–12. In July 2020, management began drafting a Performance Evaluation Plan (PIP) for Francisco. JSOF ¶ 21. Also in July, Francisco traveled to Montana for a funeral. Plf. Dep. 46:19–22. Upon returning on July 16, Francisco inquired about self-quarantining the next day, but management advised her that Montana did not require self-quarantine upon return. Plf. Dep. 49:6–15. On Friday, July 17, Francisco was scheduled to return to work in the office for her typical 7:00 AM to 3:30 PM shift. Instead, Francisco failed to report to work and sent management an email at 10:27 AM stating that she would be using four hours of personal day leave. JSOF ¶¶ 22-23. That day, management decided to demote Francisco, instead of instituting the PIP. *Id*. ¶ 24.

On Monday, July 20, Francisco let Rivera know that she would not be coming into the office that week but did not provide medical documentation for

her absence. JSOF ¶ 27. The same day, Francisco was diagnosed with anxiety. *Id*. ¶ 28. The next day, Francisco inquired with the County about how to apply for disability and provided a doctor's note explaining her need to be absent from work that week. *Id.* ¶ 29. She subsequently applied for leave under the Family Medical Leave Act. *Id*. ¶ 30.

Francisco's demotion back to an ES-1 became effective in August 2020. *Id.* ¶ 33. On October 6, 2020, Francisco filed a Charge of Discrimination with the EEOC on the basis of national origin and resigned from her position with the County later that month. *Id*. ¶ 34. In November, Francisco filed an Amended Charge of Discrimination with the EEOC to add disability discrimination. *Id*. ¶ 36. She then brought this action against the County alleging unlawful discrimination in violation of the Americans with Disabilities Act (ADA), Title VII, and retaliation and hostile work environment claims under both kinds of discrimination. *See* Compl. ¶¶ 48–107.

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party can show that no genuine dispute of material fact exists by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001) (explaining that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law" (quotation omitted)).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). When deciding whether the movant has met this burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* Once the movant's initial burden is met, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

### III.   ANALYSIS

To survive summary judgment in employment discrimination actions, a plaintiff must point to enough evidence for a reasonable factfinder to infer that the reason for an adverse employment action was illegal discrimination. A plaintiff may use different methods to defeat summary judgment, the most common being the *McDonnell Douglas* evidentiary framework or the "convincing mosaic" of circumstantial evidence. *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F. 4th 939, 946 (11th Cir. 2023).

In her response to the County's motion, Francisco recites at length the standard for the convincing mosaic method, (Doc. 44) at 9–10, but then proceeds

5

to analyze each count under the *McDonnell Douglas* method, *id.* at 10–21. By blending the methods, Francisco creates unnecessary confusion, but regardless, her claims fail for the following reasons.

## A. Count I: ADA Discrimination

A prime facie ADA claim requires showing that a plaintiff "(1) is disabled, (2) is a 'qualified' individual, and (3) was subjected to unlawful discrimination because of his disability." *Samson v. Fed. Express Corp.*, 746 F.3d 1196, 1200 (11th Cir. 2014). Disability under the ADA is defined as "(1) a physical or mental impairment that 'substantially limits one or more' of an individual's 'major life activities,' (2) a 'record of such an impairment,' or (3) 'being regarded as having such an impairment.' " *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014)). "[I]t is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee '*because of*' a disability unless it knows of the disability." *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) (quoting *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995)).

Francisco contends that her disability was anxiety, she was qualified for her position, and that the County took unlawful discriminatory acts against her through demotion, a written warning, and constructive discharge. The County only disputes the third prong—that Francisco cannot show that she was subjected to unlawful discrimination because of a disability. I agree and address in turn why no reasonable jury could conclude that any of the three episodes of allegedly unlawful discrimination were because of Francisco's anxiety.

Regarding the demotion, Francisco was diagnosed with anxiety three days *after* the County decided to demote her. JSOF ¶¶ 24, 28. Therefore, the County cannot have demoted her because of her disability. To be sure, the ADA's definition of disability includes "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). Though Francisco does not articulate it as such, her theory rests implicitly on the suggestion that the County had constructive knowledge of her anxiety because they witnessed, and were informed of, certain negative behaviors, like crying when confronted about her work performance, poor reaction to learning of the job posting on Facebook, trouble interacting with colleagues and family, and suffering from insomnia. Resp. at 11. These examples do not permit a reasonable jury to conclude that the County regarded Francisco as having anxiety (or any other disability). "[D]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183 (11th Cir. 2005) (quoting *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001)). Without evidence for a reasonable jury to find that her employer actually knew she was disabled, Francisco cannot establish unlawful discrimination on the basis of the demotion.

Francisco's argument for the written warning fails for a different reason.[1] Namely, her written warning did not constitute an adverse employment action under the ADA. The adverse action must have some effect on "the hiring, advancement, or discharge of employees, employee compensation, job training,

---

[1] Francisco argues that the County waived this argument for all claims. Because the County addressed it in its Reply and Francisco addressed it, it is not waived. *See Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261 (11th Cir. 2005) (explaining that the district court did not err in granting summary judgment on an issue raised *sua sponte* because the nonmovant addressed the issue in their reply brief and both parties were on notice that they must present all of their evidence).

and other terms, conditions, and privileges of employment." *Bosarge v. Mobile Area Water & Sewer Serv.*, No. 20-14298, 2022 WL 203020, at *9 (11th Cir. Jan. 24, 2022) (per curiam) (quoting 42 U.S.C. § 12112(a)). Here, the written warning put Francisco on notice of the areas where she needed to improve but did not change anything about her employment. (Doc. 37-2) at 29–30; *see Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) ("[W]ritten reprimands without any changes in the terms and conditions of employment are not adverse employment actions."); *see also Rayner v. Dep't of Veterans Affs.*, 684 F. App'x 911, 915 (11th Cir. 2017) (per curiam); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (per curiam); *Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 97 (11th Cir. 2006) (per curiam); *cf. Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative performance evaluations, standing alone, do not constitute adverse employment action[s]."). Thus, it cannot be considered unlawful discrimination under the ADA.

Francisco also fails to establish that she was constructively discharged due to her anxiety. A plaintiff must prove that, objectively, working conditions were "so intolerable that a reasonable person in her position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (quoting *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir. 1997)). This standard is a high bar, requiring the plaintiff to show "pervasive conduct" by the employer. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (per curiam). In her response, Francisco does not rebut the County's contention that "nothing of any significance occurred from August to October 2020." MSJ at 19–20. Francisco testified about her resignation, stating that,

before she resigned, she was assigned on ambient three times in one week in violation of County policy, believed her coworkers were talking behind her back, and certain projects were taken away from her. Plf. Dep. 68:5–12, 70:14–18, 70:21–71:2. These conditions do not rise to the level of "pervasive conduct" found in other cases, such as vulgar comments, the reduction of work responsibilities to virtually nothing, or being relocated to a new workstation without a desk or computer. *See Poole*, 129 F.3d at 553; *Morgan v. Ford*, 6 F.3d 750, 755–56 (11th Cir. 1993) (per curiam). For those reasons, Francisco does not establish constructive discharge. Had she shown that, Francisco also fails to proffer any evidence that the County constructively discharged because of her anxiety.

I explain below why, even if Francisco had sufficiently put forth a prima facie case of ADA discrimination, the record does not permit a reasonable jury to conclude that the County's stated reasons were pretextual, nor does Francisco show a "convincing mosaic" of ADA discrimination to survive summary judgment.

## B. Counts II & III: ADA Retaliation and Retaliatory Hostile Work Environment

A prima facie case of retaliation under the ADA requires three elements: (1) the plaintiff engaged in statutorily protected conduct; (2) the plaintiff suffered an adverse employment action; and (3), the adverse action was causally related to the protected expression. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). Though the elements under a retaliatory hostile work environment claim slightly differ from those of a retaliation claim, the same standard applies—whether the employer's action might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Buckley v. Sec'y of Army*, 97

F.4th 784, 799 (11th Cir. 2024). Both informal complaints and internal grievances are statutorily protected activity. *Rollins v. Fla. Dep't of L. Enf't*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam).

The County argues that Francisco's ADA retaliation and hostile work environment claims fail because she did not engage in statutorily protected conduct. MSJ at 21. I agree. Francisco filed her first internal complaint for discrimination on March 20, 2020. Plf. Dep. 35:5. At that time, Francisco told the County human rights office that she was "discriminated against because [she is] an immigrant." Plf. Dep. 80:3–4. She later explained that she was not aware at the time that her anxiety was a disability. *Id*. at 82:9–14. As for the second complaint, an email to human resources on July 17, 2020, and then an official complaint on July 23, 2023, Francisco expressed that she believed she was dealing with retaliation from the original complaint, which concerned national origin discrimination. Ex. 22 (Doc. 47-2) at 1–2. Though she described having anxiety in that email, those symptoms are couched as a consequence of her work situation, as opposed to the reason for the discrimination. *Id*. Neither the first nor second complaints constitute statutorily protected expression under the ADA, so Francisco fails to make a prima facie case for retaliation or hostile work environment under the ADA.

## C. Count IV: Title VII Discrimination

A "prima facie" case of discrimination under Title VII requires the plaintiff to show the following: (1) "she belongs to a protected class," (2) "she was subjected to an adverse employment action," (3) "she was qualified to perform the job in question," and (4) "her employer treated 'similarly situated' employees outside

her class more favorably."; *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Without direct evidence of discrimination, plaintiffs asserting violations of the ADA and Title VII can use the "same *McDonnell Douglas* burden-shifting framework" to establish a prima facie case of discrimination. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citing *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021)). If the employee is successful in making a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *Todd*, 998 F.3d at 1216. If the employer meets its burden, the burden then shifts back to the employee to present sufficient evidence creating a genuine issue of material fact that the employer's reason is pretext for discrimination. *Id.*

Because Francisco presents the same evidence for her ADA and Title VII claims without differentiating which evidence supports which claim, and the pretext analysis is the same for both claims, I address them jointly. Resp. at 20. Even if Francisco could make out a prima facie case under either claim, she does not present evidence from which a reasonable jury could conclude that the County's reasons for terminating her are pretextual, nor does her evidence create a "convincing mosaic."

To establish pretext at the summary judgment stage for both ADA and Title VII claims, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289

(11th Cir. 2005) (quoting *Combs v. Planation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (applying standard in the Title VII context); *Jackson v. Agency for Persons with Disabilities Fla.*, 608 F. App'x 740, 742 (11th Cir. 2015) (per curiam) (same but in ADA context). "We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Thus, "simply because some alleged factual dispute exists between the parties does not mean summary judgment cannot be otherwise granted." *Martin v. United States*, No. 23-10062, 2024 WL 1716235 at *4 (11th Cir. Apr. 22, 2024) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Moreover, an employer's honest belief that an employee violated employer policy, even if such belief was wrong, may constitute a legitimate, non-discriminatory reason for termination. *Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 829 (11th Cir. 2019) (per curiam) (citing *Smith v. PAPP Clinic*, P.A., 808 F.2d 1449, 1452–53 (11th Cir. 1987)).

Assuming that Francisco presented a prima facie case of ADA and Title VII discrimination, the County presented legitimate, nondiscriminatory reasons for Francisco's demotion. Those reasons, documented in the draft PIP, included "failure to thoroughly complete field inspections, consistent errors in time accounting, demonstrating a lack of understating of ES-II level protocols, etc." MSJ at 20; Levy Dep., Ex. 12., (Doc. 36-1). The final decision to demote Francisco was made when she failed to report to work in the office on Friday, July 17, 2020. JSOF ¶ 24. It is undisputed that Francisco was scheduled to be in the office that day and that she sent an email at 10:27 AM stating that she was going to use four hours of

personal day leave. *Id*. ¶¶ 22–23. Because the County has met its burden in presenting legitimate, nondiscriminatory reasons for Francisco's demotion, the burden shifts to Francisco to show that the County's reasons were merely pretext. *Todd,* 998 F.3d at 1216.

Francisco has not demonstrated that the County's reasons were merely pretext for discrimination because of her disability or national origin. Francisco does not identify a single comment or slur by anyone at the County about her national origin or anxiety. Instead, her theory is that the "inconsistent application of policies" serves as circumstantial evidence under both. Resp. at 20. Specifically, she contends the draft PIP contains "manufactured reasons" for her demotion, including the managers conspiring against her to find fault in her time reporting, harshness by managers regarding Francisco's inquiries about field inspections, and disputes related to vehicle reservations. *Id*. at 21–25.

Francisco believes she was "conspired against" by the managers, who attempted to make small reporting errors into bigger performance issues. *Id*. But Rivera, after discovering a time sheet error on June 23, 2020, expressed in the cited email exchange that she "would like to close my eyes to these types of things but I feel that it's my responsibility to have oversight to these things" and asked her supervisor if she could "Let it [g]o!" Ex. 29 (Doc. 47-9) at 2. This expressed desire to leave time reporting errors unchallenged does not support pretext and gives rise to the opposite inference of attempting to "conspire against" Francisco. Francisco also points to a meeting she missed and suggests that Rivera intentionally made her miss it by asking her to do inspections that afternoon and "feign[ed] ignorance" as to her whereabouts, making her look bad to Weed. Resp.

at 24. But Francisco does not explain how it was impossible to both conduct inspections "after lunch" and attend the meeting as planned. Francisco's conjectures about Rivera's motives are purely speculative and unsupported by the record, and not enough to suggest pretext. *See Cordoba*, 419 F.3d at 1181 ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg*, 47 F.3d 931–32)).

Francisco also perceived "harshness" in relation to carrying out her duties in field inspections on certain occasions. Resp. at 23–24. In the first occasion, Francisco perceived Rivera's email directing her to reference nineteen standard operating procedures as "harshly critical." *Id.* at 23. But the email exchanges reveal matter-of-fact work discussions, and Rivera's expressed "hope and expectation" "for [Francisco's] growth in independent judgment." Ex. 33 (Doc. 47-13) at 3; *see* Ex. 34 (Doc. 47-14); Resp. at 23. Though Francisco perceives harshness, the inquiry at the pretext stage "centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Todd*, 998 F.3d at 1218 (citing *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)).

Similarly, disputes about vehicle reservations do not suggest discrimination. The draft PIP lists several dates when Francisco did not reserve a vehicle in advance of retail inspections, and Francisco contends there was no policy for how far in advance reservations needed to be made, and in any event, she did make them. Resp. at 24–25. The policy for vehicle reservations did not appear to be well-defined, but Rivera testified that reservations for vehicles are

typically made well in advance of inspections, Rivera Dep. 181:16–182:5 (Doc. 38), and "an employer's honest belief that an employee violated its policies can constitute a legitimate reason for termination. . .," *Connelly*, 758 F. App'x at 829 (citing *Smith*, 808 F.2d at 1452–53).

Francisco's comparisons to Ryczek do not show pretext or a convincing mosaic. She points to schedule perks, his work being handed off to her, and more leniency in time reporting. Resp. at 13–14. To begin, Francisco and Ryczek were in different roles—he was an ES-2 during the entire relevant period, while Francisco was an ES-1 until her promotion and demotion. Resp. at 13. Regardless, Francisco's assertion that Ryczek's work was being handed off to her (resulting in her responding to "nearly 40% of citizen complaints") could be explained by Ryczek's prearranged four-day work week, and Francisco does not identify in the record examples of managers treating Ryczek better than herself. *Id.*; *see also* Rivera Dep. 154:16–155:16 (explaining that complaints are not assigned—as they come in, employees volunteer for them depending on availability). Francisco also perceived leniency in how managers treated Ryczek's leave requests and time reporting compared to how they treated hers. Resp. at 14. But, unlike Francisco, there is no evidence in the record suggesting Ryczek made frequent time reporting errors that required corrections. *See* Ex. 31 (Doc.47-11) (email from Rivera to Francisco correcting time reporting error and directing Francisco to "be more diligent" with leave requests and time reporting because "there have been recurring issues"). Therefore, there are no material disputed facts, and the evidence does not suggest that "unlawful discriminatory animus motivate[d] a challenged employment

decision," nor does it establish a convincing mosaic. *Wascura v. City of South Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001).

### D. Count V: Title VII Retaliation and Retaliatory Hostile Work Environment

To establish a prima facie case for Title VII retaliation, a plaintiff must prove that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse action; and (3) there is some causal relationship between the two events. *Tolar v. Bradley Arant Boult Cummings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). The retaliation standard is whether the adverse action would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Buckley*, 97 F.4th at 799. Retaliatory hostile work environment claims are "really retaliation claims . . . rather than hostile work environment claims," so the same standard applies. *Id*. (citing *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1207 (11th Cir. 2021)) (cleaned up). To show causation, the plaintiff must establish that her "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex.s Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). As Francisco uses much of the same evidence for each of her claims, even if she succeeded in making a prima facie case, she fails to show pretext or establish a convincing mosaic of evidence.

None of Francisco's asserted adverse employment actions—demotion, a written warning, and constructive discharge—establish retaliation or a retaliatory hostile work environment based on national origin discrimination. Resp. at 19–20. To constitute an adverse action, the employer's conduct must have been serious enough to "dissuade[] a reasonable worker from making or supporting a charge of discrimination," considering all the circumstances, and must be material. *Moore*

*v. City of Homewood*, 21-11378, 2023 WL 129423, at *6 (11th Cir. Jan. 9, 2023) (per curiam) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). " 'Trivial harms' are not adverse employment actions," *Moss v. St. Vincent's Health Sys.*, No. 22-13956, 2024 WL 729953 at *4 (11th Cir. Feb. 22, 2024) (per curiam), but only those actions that "produce[] an injury or harm," *Burlington N.*, 548 U.S. at 67-68. The written warning that Francisco points to was issued in response to Francisco not showing up to work on July 17, 2020, nor the following week. (Doc. 37-2) at 29–30. The warning stated that it would remain in Francisco's personnel file for at least nine months but changed nothing about her role or salary in the immediate, instead reemphasizing pre-existing responsibilities to improve upon. *Id.* This is unlike other situations where employment actions were found to be adverse, such as harm in the form of "[t]he loss of a salary for a period of months, weeks, or days." *Alvarez*, 610 F.3d at 1268. Thus, the warning did not "produce[] an injury or harm," and it therefore does not constitute an adverse employment action. *See Burlington N.*, 548 U.S. at 67–68.

The County does not dispute that a demotion is an adverse employment action under Title VII. MSJ at 23–24. But Francisco cannot show that but for her complaint she would not have been demoted. *See Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 362. Francisco argues that temporal proximity indicates causation. Resp. at 17. Here, a gap of three months between the first complaint and the demotion, on its own, defeats temporal proximity. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *see also Wascura*, 257 F.3d at 1248 (explaining that three and a half months between the protected activity and adverse action is too long to establish causation by itself). But Francisco claims that "there were not any intervening

17

events to sever any causal inference." Resp. at 18. Not so. It is undisputed that Francisco did not comply with directives from her supervisors to come to work in person after returning from a trip, and her supervisors therefore decided to demote her JSOF ¶¶ 22, 24–25. Francisco points to the removal of the mapping tool and field inspection scrutiny as evidence supporting retaliation. Resp. at 18–19. The mapping tool was removed because it caused computer issues, Levy Dep. 82:3–19, and the exchanges about the field inspections reveal Rivera encouraging Francisco to use her own judgment—neither of which show causation related to the demotion, Exs. 33, 34; Resp. at 23. Therefore, Francisco cannot show that her complaint was the but-for cause of her demotion.

Francisco's constructive discharge claim fails for the same reasons as previously addressed. She does not cite to any evidence suggesting work conditions were "so intolerable that a reasonable person in her position would have been compelled to resign." *Poole*, 129 F.3d at 553 (quoting *Thomas*, 116 F.3d at 1433–34). Therefore, Francisco cannot establish a prima facie case for retaliation or retaliatory work environment under Title VII nor can she show a convincing mosaic.

## IV.   CONCLUSION

Because there is not sufficient "evidence on which the jury could reasonably find for the [nonmovant]," Pinellas County is entitled to summary judgment. *Burger King Corp.*, 169 F.3d at 1321.

Accordingly, the following is **ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED in full**.

2. The clerk is directed to enter judgment for Pinellas County on all counts,

   to terminate pending deadlines, and to close this case.

**ORDERED** in Tampa, Florida, on November 21, 2024.


Kathryn Kimball Mizelle
United States District Judge